THOMAS BREWER *vs.* THE BOSTON AND WORCESTER RAIL ROAD CORPORATION.

A. and B., owners of adjoining land, intending to establish the divisional line according to the true boundary, agreed, by parol, on a line that did not conform to such boundary, and afterwards held possession according to such conventional line : B. sold his land to C. : Before the sale, A. stated to C. that the land which he (A.) claimed was bounded by said conventional line between him and B. and that he did not claim beyond that line : After the sale to C., he made improvements on the land next to such conventional line, with the knowledge of A., who was often present and pointed out said line, without expressing any dissent to C.'s proceedings, or giving notice that he had any claim to said land : A. afterwards discovered that said conventional

line was not the true dividing line, and that C. was in possession, as B. had been, of a piece of land which, according to the true line, belonged to him, (A.,) and he therefore brought a writ of entry against C. to recover the land between the true line and said conventional line. *Held,* that A. was not estopped to claim this land of C., as he had acted under a mere mistake, without fraud or gross negligence.

WRIT OF ENTRY to recover a small parcel of flats appurtenant to the demandant's upland, and situate in the same cove that is mentioned in the cases of the present tenants and Mary Tolman against Sparhawk and others, *ante,* p. 469.

The case was submitted to the court on a statement of facts, as follows : On the 24th of August 1822, the demandant and Robert P. Tolman, under whose wife, Mary Tolman, the tenants claim, agreed that the dividing line between their land and flats below high water mark should begin at the westerly corner of a stone wall standing on the land then belonging to the demandant, and should run thence northwesterly, parallel with Castle Street, and 235 feet distant therefrom, to low water mark, or so far as these flats extended : Until the decision of this court, in the case of *Sparhawk & wife* v. *Bullard,* (1 Met. 95,) the line then agreed on was always considered as the true boundary line between the flats of the demandant and the flats of said Tolman and wife, now belonging to the tenants : The demandant always claimed to own the flats lying northeasterly of said line, and exercised various acts of ownership on the same : He stated to the agent of the tenants, before they purchased the land and flats of said Tolman and wife, that the land, which he claimed, lay northeasterly of said line, and that he did not claim the land southwesterly of said line ; and he has also made similar representations to others : After the tenants purchased of Tolman and wife, they proceeded, with the knowledge of the demandant, to fill up said land lying southwesterly of said line, and to erect buildings and fences thereon, and exercise other acts of ownership on the land ; and the demandant was frequently present and saw said improvements, and pointed out the said line, and never expressed any dissent to said proceedings, nor gave any notice to the tenants that he had any claim to the said land.

When said agreement of August 24th 1822 was made, the afore-

said suit of *Sparhawk & wife* v. *Bullard* had not been brought, and the parties acted under the belief that their respective flats were by law in the direction and in conformity to the lines then agreed on.    Said Robert P. Tolman, however, had no title to the upland or flats, besides what belonged to him as husband of Mary Tolman, who was seized thereof in the manner shown by the deeds, &c. which are made part of this case.    [Here the *parties set forth various deeds, proceedings of the probate court* in the division and settlement of estates, &c.. from 1730 down wards ; from which the tenants, at the argument, contended that the demandant had *no title* to the flats in question.]

The parties agreed that " if, upon the foregoing facts, deeds, &c. the court shall determine that the demandant is entitled to any flats, (which is denied by the tenants,) they shall be assigned to and recovered by him, in conformity to the lines and princi- ples established in said case of *Sparhawk & wife* v. *Bullard* ; unless the court shall determine, upon said facts, that the de- mandant is by law estopped, as against the tenants, from claiming the flats appurtenant to his upland in the direction as settled by said case ; in which event, the demandant is to recover in such manner and direction, if at all, as the court shall adjudge."

It was further agreed that the court might draw all such infer- ences from the foregoing facts, deeds and documents, as a jury could draw.

*Bartlett*, for the demandant.    The demandant is not estopped to claim the flats demanded in this suit.    There is no technical estoppel ; for that must be by deed or record.    Per Bronson, J. 3 Hill, 221.    The doctrine of estoppels *in pais* has been intro- duced into courts of law from courts of chancery.    But even in a court of chancery, fraud is an element of such estoppels, or such carelessness as amounts to a fraud on one who acts on the faith of an agreement, a representation, or the silence of a party who is apprized of the facts of the case.    1 Fonbl. Book I. c. 3, § 4.    2 Sugd. Vend. (Amer. ed. of 1836) 299.    1 Story on Eq. § 386.    And this doctrine has frequently been applied by courts of law, in suits as to *personal property*.    *Hall* v. *Huse*, 10 Mass 39.    *Whitaker* v. *Sumner*, 7 Pick. 556

*Jones* v. *Sasser,* 1 Dev. & Bat. 452. *Dezell* v. *Odell,* 3 Hill, 215. *Mackay* v. *Holland,* and *Dewey* v. *Field,* 4 Met. 69, 381. *Pickard* v. *Sears,* 6 Adolph. & Ellis, 474. *Welland Canal Co.* v. *Hathaway,* 8 Wend. 480.

As to *real estate,* it has been held in this State and in Maine, that boundary lines, agreed on by the parties, are to be regarded as the true lines, unless the contrary is clearly shown ; but that a party, by clear proof of the true line, may claim according to it, unless he has practised a concealment that amounts to a fraud. *Pond* v. *Pond,* 14 Mass. 403. *Whitney* v. *Holmes,* 15 Mass. 152. *Stone* v. *Clark,* 1 Met. 378. *Parker* v. *Barker,* 2 Met. 423. *Gove* v. *Richardson,* 4 Greenl. 327. *Moody* v. *Nichols,* 4 Shepley, 23. S. P. *Wakefield* v. *Ross,* 5 Mason, 16. In the case at bar, the attempt is to apply an estoppel where the demandant's real title is unquestionable, and where there has been no fraud, misrepresentation or carelessness on his part, but a mere mistake common to him and his adjoining neighbors. Nothing was given up by way of settling a boundary, nor was there any compromise ; for there was no previous dispute or disagreement.

If the New York doctrine, on which the tenants will rely, is to be introduced into our jurisprudence, yet that doctrine will not work an estoppel in this case. All the New York cases were those of boundary, and they stand on two propositions : 1st, Express agreement, fixing the line on both sides, and possession accordingly ; or 2d, acts and declarations, and expenditures made on the faith thereof, and long occupation and acquiescence. And all those decisions were greatly affected by the fact, that there is no law in New York by which a demandant may be made to pay for improvements on the demanded premises. See 16 Wend. 313.

The English cases of estoppel *in pais* are mostly cases of awards, or something in the nature of a judgment, and relate to boundaries merely. No case goes to the forfeiture of a whole estate. But in the case at bar, the question is not one of mere boundary. If the demandant is estopped, he loses all his flats ; for as there is no estoppel to the north, he can have flats nowhere, unless he can those which he demands in this action.

*C. P. Curtis,* for the tenants.    The acts and declarations of the demandant estop him from claiming the premises which he now demands.    *Jackson* v. *Ogden,* 4 Johns. 143, per Spencer, J.    7 Johns. 241 – 243, per Kent, C. J.    Fraud is not necessary to an estoppel in such a case as this.    " Where the representation is made through a mistake, if the person making it might have had notice of his right," the purchaser shall hold the land. 2 Sugd. Vend. (Amer. ed. of 1836) 300.    See *Jackson* v. *Van Corlaer,* 11 Johns. 123.    *Rockwell* v. *Adams,* 7 Cow. 761 : 6 Wend. 467 : S. C. in error, 16 Wend. 285.    *Kip* v. *Norton,* 12 Wend. 130.    *Dibble* v. *Rogers,* 13 Wend. 536.    *Sawyer* v. *Fellows,* 6 N. Hamp. 107.    *Tarrant* v. *Terry,* 1 Bay, 239.    *Hatch* v. *Kimball,* 4 Shepley, 146.

*Whitney* v. *Holmes,* 15 Mass. 152, only decided that the agreement *in that case* was not conclusive.    But Parker, C. J. said, that if it had been submitted to a jury, it might have availed. In *Gregg* v. *Wells,* 10 Adolph. & Ellis, 98, Lord Denman says, "a party who *negligently* or culpably stands by and allows another to contract on the faith and understanding of a fact which he can contradict, cannot afterwards dispute that fact in an action against the person whom he has himself assisted in deceiving."    In *Wallis* v. *Truesdell,* 6 Pick. 457, Wilde, J. said, that if the plaintiff's declarations had been acted on by the other party, and the plaintiff had thereby acquired an advantage, such declaration would have been conclusive.    See also 8 Yerg. 398.

The opinion of the court was delivered March 18th 1844.

WILDE, J.*    At the argument of this cause, several questions were discussed by counsel, one of which has since been decided in the case of *Tolman* v. *Sparhawk & others (ante,* 469). It was objected in that case, as it was in this, that the parties to a parol agreement, establishing a divisional line between two adjoining lots of land, were estopped to prove that the line thus established was not the true line.    The decision, however, in that case was, that where a line thus agreed upon was supposed by the parties to be the true line, and afterwards it appeared that it

---

* *Hubbard,* J. did not sit in this case

was not, such a parol agreement, founded in mistake, would not oe binding, by way of estoppel or otherwise. But it has been argued in this case, that the demandant is estopped by his admissions and representations made to the tenants' agent, before their purchase of the demanded premises. It is agreed that the demandant stated to the tenants' agent, before they purchased the flats demanded, that his flats lay northerly of the agreed line, and that he did not claim the land lying southwesterly of said line. But it is also agreed, that the parties to the saia parol agreement acted under the belief that their respective flats were in the direction and in conformity to the line agreed on. We must therefore consider the declarations and admissions of the demandant as having been made in good faith, and by mere mistake. And admissions thus made do not, we think, by law operate by way of an estoppel. This kind of estoppel was first established by courts of equity, and has since, to a certain ex tent, been adopted by courts of law. It is founded on fraud, or gross negligence amounting to fraud. 1 Story on Eq. §§ 386, 391. The doctrine, we think, is correctly laid down by Nelson, J. in *Welland Canal Co.* v. *Hathaway,* 8 Wend. 483. " As a general rule," he says, " a party will be concluded from denying his own acts or admissions, which were expressly designed to influence the conduct of another, and did so influence it, and when such denial will operate to the injury of the latter, and where in good conscience and honest dealing he ought not to be permitted to gainsay them." The same doctrine, substantially, is laid down in *Pickard* v. *Sears,* 6 Adolph. & Ellis, 474. " The rule of law is clear, " says Lord Denman, " that where one by his words or conduct wilfully causes another to believe the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time." Now it does not expressly appear by the case stated, that the declarations of the demandant were made to the tenants' agent with a view to influence their conduct, or that he had knowledge of their intention to purchase. Nor does it appear that the tenants will be injured by the recov-

ery of the flats ; for if they purchased with warranty, they may be indemnified.   We do not, however, decide the case on these considerations, but on the ground that the demandant has acted fairly, under a mistake, and that he has made no declaration contrary to his honest belief at the time, or with any intention to deceive the tenants.   And we think it clear, that declarations thus made do not operate in the nature of an estoppel.

·   A party is not to be estopped to prove a legal title to his estate, by any misrepresentation of *its* locality, made by mistake, without fraud or intentional deception, although another party may be induced thereby to purchase an adjoining lot, the title to which may prove defective ; for he may require a warranty ; and it would be most unjust that a party should forfeit his estate by a mere mistake.

·   The other objection to the demandant's title is, that his lot of land is not bounded by the sea, or salt water, and consequently that he has no title to flats demanded, nor indeed to any other flats.   This objection is inconsistent with the first objection founded on the parol agreement to settle a divisional line between the flats of the demandant and those of the tenants' grantor ; but if this agreement was founded in a mistake as to the demandant's title, the tenants will not be estopped to prove it — for the reasons already expressed.   This, however, we think they haved failed to do.   [Here the judge stated the contents of the demandant's ancient and recent title deeds, and of the other documents put into the case.]   Upon the whole evidence, we are of opinion that the demandant has satisfactorily proved the elder and better title, and that he is entitled to the flats below his upland, to be assigned to him in conformity to the lines and principles estab lished in the case of *Sparhawk & wife* v. *Bullard*, 1 Met. 95, and that judgment therefor should be entered accordingly.